IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROXANNE ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>UPMC PRESBYTERIAN SHADYSIDE and INFECTIOUS DISEASE CONNECT, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 22-29<br>)  Judge Nora Barry Fischer<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM ORDER**

In this employment discrimination action, Plaintiff Roxanne Robinson ("Robinson") alleges that Defendants UPMC Presbyterian Shadyside ("UPMC") and Infectious Disease Connect, Inc. ("IDC") were her joint employers and that she was terminated due to age and race discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 955, ("PHRA"). (Docket No. 29). She has also asserted state law claims for breach of contract, civil conspiracy, and violations of the Pennsylvania Wage Payment and Collection Law, ("WPCL"). (*Id.*). Presently before the Court are three contested motions for summary judgment which have been fully briefed and are set to be argued at a motion hearing on September 18, 2023. (Docket Nos. 61-72; 75-81; 84-86; 88). This Memorandum Order addresses an evidentiary dispute set forth in the parties' briefing. To that end, in its Reply Brief, UPMC argues that Robinson's "Affidavit" marked as Exhibit 38 and submitted as part of her Second Appendix of Exhibits, (Docket No. 81-17), should be stricken under the "sham affidavit" doctrine because ¶ 36 of same allegedly contradicts her deposition

1

testimony. (Docket No. 85). At the direction of the Court, Robinson submitted a Sur-Reply Brief wherein she argues that her "Affidavit" should not be stricken because her statements therein are consistent with her deposition testimony. (Docket No. 88). After careful consideration of the parties' positions, and for the following reasons, UPMC's request to strike ¶ 36 of Robinson's "Affidavit" will be denied.

Relevant here, summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In terms of procedure, the Court may accept any facts which are supported by the evidentiary record and admitted by the opposing party or those that are deemed admitted because they are not sufficiently supported in accordance with the rules. *See* W.D. Pa. LCvR 56.E. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[W]hile 'a formal affidavit is no longer required' on summary judgment, a certification submitted as a substitute for an affidavit must be subscribed in proper form as true under penalty of perjury," consistent with 28 U.S.C. § 1746 ("I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'"). *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019) (quoting Fed. R. Civ. P. 56, 2010 amd.). Finally,

> [w]hen a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment in deciding if a genuine, material factual dispute exists. [*See Hackman v. Valley*

> *Fair*, 932 F.2d 239, 241 (3d Cir. 1991)]; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). This is the sham-affidavit doctrine. In applying it we adhere to a "flexible approach," *Jiminez*, 503 F.3d at 254, giving due regard to the "surrounding circumstances," *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004).
>
> If, for example, the witness shows she was "confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact." *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 705 (3d Cir. 1988); *see Jiminez*, 503 F.3d at 254. Same result if there's "independent evidence in the record to bolster an otherwise questionable affidavit." *Baer*, 392 F.3d at 625.
>
> The court may, on the other hand, disregard an affidavit when the "affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction." *Martin*, 851 F.2d at 706; *see Jiminez*, 503 F.3d at 254. It may similarly disregard an affidavit "entirely unsupported by the record and directly contrary to [other relevant] testimony," *Jiminez*, 503 F.3d at 254, or if it's "clear" the affidavit was offered "solely" to defeat summary judgment, *id.* at 253; *see In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006); *Martin*, 851 F.2d at 705.

*Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391–92 (3d Cir. 2017).

In light of such authority, this Court has previously disregarded purported affidavits which are based "upon information and belief" rather than an individual's personal knowledge or otherwise did not comply with the applicable federal statute. *See e.g., Lamarca*, 2010 WL 2044627, at *4 (rejecting "affidavit" which was s/ by the plaintiff and stated only that the statements contained therein "are made subject to the penalties of 18 Pa.C.S.A. 4904 relating to unsworn falsification to authorities."); *Hill v. Barnacle*, 509 F. Supp. 3d 380, 394 (W.D. Pa. 2020) (citing *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x. 377, 387 (3d Cir. 2020)) ("Rule 56(e) limits the proper contents of an affidavit to facts, and the facts presented must be alleged on personal knowledge.... Ultimate or conclusory facts ... as well as statements made on belief or 'on information and belief,' cannot be utilized on a summary judgment motion.")

3

(further citations omitted).  Here, Plaintiff's Exhibit 38 is 6-pages long, contains 49 separately numbered paragraphs and is titled "Affidavit," but cannot be considered a formal affidavit because it is neither signed by Robinson nor notarized as is the common practice.  *See Lamarca v. Verizon Pa., Inc.*, Civ. A. No. 09-203, 2010 WL 2044627, at *4 (W.D. Pa. May 20, 2010).  Rather, the accompanying Dropbox "audit trail" shows that the document was forwarded to Robinson by her counsel on July 31, 2023 and electronically signed by her a few minutes later. (*Id*. at 8).  The entirety of the "Affidavit" is also qualified with the following language "The foregoing statements are true and correct to the best of my knowledge, **information and belief**.  I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities." (Pl Ex. 38 at para 49 (emphasis added)).  Hence, the Court retains the discretion to disregard the "Affidavit" since it has not been submitted in the appropriate form of an unsworn declaration and broadly states that it is based on her knowledge, information and belief.  *See e.g.*, 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4).  The Court also recognizes that UPMC did not timely raise an objection to the form of the "Affidavit" and that Robinson could cure such procedural defects by resubmitting an unsworn declaration with the appropriate language set forth in 28 U.S.C. § 1746.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

With that said, after considering the totality of the circumstances and applying the "flexible approach" to the "sham affidavit" doctrine adopted by our Court of Appeals, the Court holds that UPMC's narrow objections to Robinson's statements in ¶ 36 of Exhibit 38 must be overruled because UPMC has failed to establish that those statements contradict her earlier deposition testimony and that it should be disregarded as a "sham affidavit." *See Baer*, 392 F.3d at 625.  To the contrary, the Court finds that UPMC's proffered concise statement at ¶ 34 that she denied ever

being subject to discrimination while working at UPMC is overbroad and does not accurately reflect the cited deposition testimony wherein she admitted only that she did not believe that she was discriminated against based on her age and race while she worked at UPMC between April 2008 and November 2015. (*See* Docket No. 68-4, Robinson Depo at pp. 62-63). As Robinson points out in her response and her objection to UPMC's proffered concise statement ¶ 34, she testified at other points in her deposition that she believed that she was discriminated against by G. Wills when they worked together at the UPMC Critical Care Medicine Department from 2016 through August 2017. (*See* Docket No. 78 at ¶ 34; 88 at 1-3).

In this regard, ¶ 36 of Robinson's "Affidavit" states the following:

> Making matters worse, I had experienced instances of what I considered to be discrimination involving Ms. Wills when we had previously worked together at UPMC. As I testified in my deposition, Ms. Wills treated me badly while at UPMC and I considered the same to be discriminatory because I observed that my other co-workers were not being treated by Ms. Wills in the same hostile manner. I resigned my employment from UPMC as a result.

(Docket No. 81-17, Pl. Ex. 38 at ¶ 36). The parties agree that "Robinson worked for UPMC in various positions for approximately nine years from April 2008 through August 2017," and that "[i]n 2016, Robinson worked as a Credentialing Manager in UPMC's Critical Care Medicine Department." (Docket No. 78 at ¶¶ 23-25). UPMC's proffered concise statement at ¶ 34 and Robinson's response are the following:

> [UPMC'S CONCISE STATEMENT ¶] 34. Robinson never experienced any discrimination while she worked for UPMC. (Robinson Dep. 62-63).
>
> [PLAINTIFF'S] RESPONSE – Denied. Plaintiff quit UPMC as a result of Ms. Wills being rude, hostile, nasty and discriminating against her on the basis of her age and/or race. Exhibit "38" at ¶ 36 and ECF No. 72-3 (Dep. Tr. Robinson) p. 55 ln. 5-7, p. 56 ln. 10-12, p. 57 ln. 5-8, p. 58 ln. 3-7 and 22-25 & p. 193 ln 19-25. Plaintiff stated that one of the reasons she left UPMC was due to Ms. Wills

5

> "she didn't treat the other ones like she treated me. I mean, we, you know – because I was black, I think she just really homed in on me. Because the others were there, and she did not talk to them like that."
> *Id.* at p 239 ln. 9-16.

(Docket No. 78 at ¶ 34).  While UPMC suggests at ¶ 34 that "Robinson never experienced any discrimination while she worked for UPMC," the cited testimony at pp. 62-63 of Robinson's deposition is the following:

> Q.     When you worked for the University of Pittsburgh Medical Center for the dates that are listed here in your resume, did you believe that you experienced discrimination on the basis of your race?
>
> A.     These other jobs here?
>
> Q.     Correct.  **So from April of 2008 through November of 2015, when you were working for the University of Pittsburgh Medical Center**, did you believe that you experienced any discrimination on the basis of your race.
>
> A.     No.
>
> Q.     And **during that same time period**, did you believe you experienced any discrimination on the basis of your age?
>
> A.     No.
>
> Q.     You testified that you were unhappy when you were working in that centralized credentialing department [from November 2015 to August 2017], and you started looking for another job; correct?
>
> A.     Uh-huh.
>
> Q.     And do you recall when that was that you started looking?
>
> A.     It was during the – I want to say maybe around April, May.
>
> Q.     And per your resume, you in August 2017 began working at Iagnosis.  How did you come to be employed by Iagnosis?
>
> A.     I saw an ad out there, and I applied for the job, and I got the interview, and I got the job.

(Docket No. 68-4, Robinson Depo at pp. 62-63 (emphases added)).  Therefore, Robinson admitted only that she did not experience discrimination while she worked at UPMC from April of 2008 through November 2015, as opposed to the entire time she was employed there through November 2017.  (*Id*.).

As to the latter time period in 2016-2017, when she worked at UPMC's Critical Care Medicine Department under G. Wills and another supervisor, Robinson testified that she was treated differently than other employees because she was black and now believes that she had been subjected to race discrimination by Wills.  (*Id*.).  Specifically, she testified:

> Q. Based on your testimony that you provided earlier today, would you agree that you do not respect G Wills?
>
> A. I respect G, you know. I just – the way she treated me was not tolerable, you know. I couldn't take it. I cried many days.  I mean, she just humiliated me. She made my life just miserable. But I mean –
>
> Q. And are you referring to the way she treated you when you were in 2017 and 2017, or when you at ID Connect from the time she worked at both ID –
>
> A. Both. G Wills did that – when we were down there – she talked down to me, like I was nobody. If I asked her a question, and she would give that look like –
>
> Q. And when you are referring to Forbes Tower, is that in 2016.
>
> A. Yes.
>
> Q. 2016 – 2017?
>
> A. Yes. Because, again, that is one of the reasons I left UPMC.
>
> Q. I think you stated there were a number of reasons you left?
>
> A. Yes, because of G, yes.
>
> Q. Were all the reasons because of G?

7

>A. G, and then the more money.
>
>Q. You stated and testified earlier that G was a very demanding supervisor, and that your peers held the same opinion of her. So is it your testimony that G treated you and your co-workers the same?
>
>A. No, like I said, I – she didn't treat the other ones like she treated me. I mean, we, you know – because I was black, I think she just really homed in on me. Because the others were there, and she did not talk to them like that.
>
>Q. When did you begin to think it was because you were black that she was treating you this way?
>
>A. Really, this time here, at IDC. I mean, like I said, it was little incidents that I can relate back to 2016 now, and l left out of there before it got, you know.
>
>Q. So at the time in 2016, you had no thought that she was treating you differently because of –
>
>A. Exactly. I thought she was just mean to me.

(Docket No. 68-4, Robinson Depo at 238-239). All told, the Court agrees with Robinson that her deposition testimony is consistent with ¶ 36 of the "Affidavit" and that disregarding same under the "sham affidavit" doctrine is not warranted in this case. *See Daubert v. NRA Grp., LLC*, 861 F.3d at 391-92.

For all of these reasons,

IT IS HEREBY ORDERED that UPMC's request that the Court strike the "Affidavit" based on the "sham affidavit" doctrine set forth in its Reply (Docket No. 85) is DENIED; and,

IT IS FURTHER ORDERED that Plaintiff shall submit a revised Exhibit 38 containing an unsworn declaration in the form set forth in 28 U.S.C. § 1746 by **September 15, 2023**.

>*s/Nora Barry Fischer*
>Nora Barry Fischer
>Senior United States District Judge

cc/ecf: counsel of record